GIBSON, DUNN & CRUTCHER LLP
BRIAN C. ASCHER, *pro hac vice*
    bascher@gibsondunn.com
200 Park Avenue
New York, New York  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

KATHERINE V.A. SMITH, SBN 247866
    ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

GEORGE B. ADAMS III, SBN 321904
    gadams@gibsondunn.com
One Embarcadero Center Suite 2600
San Francisco, California  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendants
PAGAYA TECHNOLOGIES LTD., THEOREM TECHNOLOGY, INC., THEOREM PARTNERS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUGH EDMUNDSON, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>PAGAYA TECHNOLOGIES LTD., THEOREM TECHNOLOGY, INC., THEOREM PARTNERS, LLC, and DOES 1-100,<br><br>    Defendants. | CASE NO. 3:25-cv-06029-JSC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing**:<br>Date:        October 2, 2025<br>Time:        10:00 a.m.<br>Place:        Courtroom 8<br>Judge:        Hon. Jacqueline Scott Corley<br><br>Action Filed:  June 4, 2025<br>Trial Date:    None Set |

Gibson, Dunn & Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 2, 2025, at 10:00 a.m. in Courtroom 8 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendants Pagaya Technologies Ltd., Theorem Technology, Inc., and Theorem Partners, LLC (collectively, "Defendants") will and hereby do move the Court for an order disqualifying Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") from representing Plaintiff Hugh Edmundson ("Plaintiff") in this action because Quinn's representation of Plaintiff is directly adverse to Defendants or, in the alternative, substantially related to a prior matter in which Quinn represented Defendants. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Katherine V.A. Smith and Eric Watson, all further pleadings which may be filed by Defendants, the paper and records on file herein, and such further evidence and argument as the Court may permit or require at or prior to the time of the hearing on this Motion.[1]

**ISSUE TO BE DECIDED**

Whether Quinn should be disqualified from representing Plaintiff in this action, which is based in part on Plaintiff's allegation that Defendants are improperly attempting to enforce the non-compete provision in their standard employment agreement, given that Quinn provided legal advice to Defendants regarding the enforceability of this same exact provision just two weeks before Quinn threatened to sue Defendants on Plaintiffs' behalf.

**RELIEF SOUGHT**

Defendants seek an order disqualifying Quinn as counsel for Plaintiff.

---

[1] On July 24, 2025, Defendants filed a motion to compel arbitration. Dkt. 10. By filing this Motion, Defendants are not waiving, and indeed are expressly reserving, their right to compel arbitration.

Gibson, Dunn & Crutcher LLP

DATED: July 31, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Katherine V.A. Smith*
Katherine V.A. Smith

Attorneys for Defendants PAGAYA TECHNOL-OGIES LTD., THEOREM TECHNOLOGY, INC., THEOREM PARTNERS, LLC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 3

    A.  Quinn Advises Pagaya Regarding The Non-Compete and Non-Solicitation Provisions In Its Standard Employment Agreement. ..................................... 3

    B.  Quinn Threatens To Assert Claims Against Pagaya Based On The Non-Compete and Non-Solicitation Provisions In Its Standard Employment Agreements. ................................................................................................................. 5

    C.  Pagaya Promptly Objects To Quinn's Representation of Plaintiff. ........................... 5

    D.  Quinn Sues Pagaya On Plaintiff's Behalf Based In Part On The Non-Compete and Non-Solicitation Provisions In Pagaya's Standard Employment Agreement on which Quinn Had Advised Pagaya. .............................. 7

III.  LEGAL STANDARD .......................................................................................................... 8

IV.  ARGUMENT ....................................................................................................................... 8

    A.  Because Pagaya Was a Current Client and Pagaya's and Plaintiff's Interests Were Directly Adverse, Disqualification Is Automatic. ............................... 8

        1.  Adversity ........................................................................................................ 9

        2.  Concurrent Representation ........................................................................... 10

    B.  Even if Pagaya Were a Former Client, Disqualification Would be Required Because This Action Would be Substantially Related To Quinn's Prior Work For Pagaya. ....................................................................................................... 12

    C.  Quinn's Alleged Ethical Screen Is Ineffective. ...................................................... 14

    D.  Quinn's Advance Waiver Is Inapplicable, Invalid, And Ineffective. ...................... 16

V.  CONCLUSION .................................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923 (2018)................................................................................15

*Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*,
   659 F. Supp. 3d 1061 (N.D. Cal. 2023) ..........................................................8, 11

*Beltran v. Avon Prods., Inc.*,
   867 F. Supp. 2d 1068 (C.D. Cal. 2012)..........................................................12, 14

*In re Charlisse C.*,
   45 Cal.4th 145 (2008) .......................................................................................15

*City & Cnty. of San Francisco v. Cobra Sols., Inc.*,
   38 Cal.4th 839 (2006) ......................................................................................2, 9

*City Nat. Bank v. Adams*,
   96 Cal. App. 4th 315 (2002)...........................................................................13, 14

*Concat LP v. Unilever, PLC*,
   350 F. Supp. 2d 796 (N.D. Cal. 2004) ..............................................................17

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
   20 Cal.4th 1135 (1999) .................................................................2, 8, 9, 10, 15

*Farris v. Fireman's Fund Ins. Co.*,
   119 Cal. App. 4th 671 (2004)............................................................................13

*Flatt v. Superior Ct.*,
   9 Cal.4th 275 (1994) ................................................................9, 11, 12, 14

*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*,
   79 Cal. App. 4th 114 (2000), *as modified* (Mar. 17, 2000)................................10

*Jessen v. Hartford Cas. Ins. Co.*,
   111 Cal. App. 4th 698 (2003)............................................................................13

*KBS Holdco, LLC v. City of W. Hollywood*,
   2023 WL 9687607 (C.D. Cal. Sept. 15, 2023)...................................................15

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
   105 F. Supp. 3d 1100 (E.D. Cal. 2015)..............................................................17

*Loral Corp. v. Moyes*,
   174 Cal. App. 3d 268 (1985)..............................................................................14

*Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079 (C.D. Cal. Dec. 5, 2016).........................11

ii

Gibson, Dunn & Crutcher LLP

*NuVasive, Inc. v. Miles*,
  2018 WL 4677607 (Del. Ch. Sept. 28, 2018) ...................................................................14

*SC Innovations, Inc. v. Uber Techs., Inc.*,
  2019 WL 1959493 (N.D. Cal. May 2, 2019) .......................................................................1

*Sharp v. Next Ent., Inc.*,
  163 Cal. App. 4th 410 (2008) ..............................................................................................8

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
  6 Cal.5th 59 (2018) ............................................................................................................11

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
  72 Cal. App. 4th 1422 (1999) ............................................................................................11

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
  6 Cal. App. 4th 1050 (1992) ................................................................................................9

*United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*,
  2018 WL 6619981 (N.D. Cal. Dec. 18, 2018) ...............................................................3, 16

*Victaulic Co. v. Am. Home Assurance Co.*,
  80 Cal. App. 5th 485 (2022) ..............................................................................................12

*Visa U.S.A., Inc. v. First Data Corp.*,
  241 F. Supp. 2d 1100 (N.D. Cal. 2003) ............................................................................16

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
  98 F. Supp. 3d 1074 (C.D. Cal. 2015) ..............................................................................16

*Wood v. Superior Ct.*,
  46 Cal. App. 5th 562 (2020), *as modified* (Apr. 8, 2020) ................................................10

*X Corp. v. Bright Data Ltd.*,
  2024 WL 3408220 (N.D. Cal. July 12, 2024) ...............................................................1, 15

**Statutes**

Civ. L.R. 11-4(a)(1) ..................................................................................................................8

**Rules**

Cal. R. Pro. Conduct R. 1.01(e) ..............................................................................................16

Cal. R. Pro. Conduct R. 1.10(a) ........................................................................................2, 15

Cal. R. Pro. Conduct R. 1.7(a) ..........................................................................................2, 8

Cal. R. Pro. Conduct R. 1.7 cmt. [1] .................................................................................7, 8

Cal. R. Pro. Conduct R. 1.7 cmt [10] ...................................................................................15

Cal. R. Pro. Conduct R. 1.7 cmt. [9] ....................................................................................15

iii

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

Cal. R. Pro. Conduct R. 1.7(d) ............................................................................16

Cal. R. Pro. Conduct R. 1.9(a) ............................................................................11

Cal. R. Pro. Conduct R. 1.9(a) cmt. [1]...............................................................12

Cal. R. Pro. Conduct R. 1.9(a) cmt. [3]...............................................................12

**Treatises**

Restatement (Third) of the Law Governing Lawyers § 14 (2000).........................10

Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics: The Lawyer's Deskbook on
   Professional Responsibility § 1.7-5 (2024-2025 ed.)...........................................9

23 Williston on Contracts § 62:3 (4th ed.)...........................................................10

**Regulations**

ABA Formal Op. 25-516 .......................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is yet another case in which Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") has brazenly violated its ethical obligations by turning around and suing its own client.  The firm is a repeat offender, having been disqualified multiple times for this exact misconduct.  In *X Corp. v. Bright Data Ltd.*, 2024 WL 3408220, at *1 (N.D. Cal. July 12, 2024), Judge Alsup disqualified Quinn for suing a former client over web-scraping—after having previously defended that client's web-scraping business.  Likewise, in *SC Innovations, Inc. v. Uber Techs., Inc.*, 2019 WL 1959493, at *10 (N.D. Cal. May 2, 2019), Magistrate Judge Spero disqualified Quinn for bringing antitrust claims against a client based on conduct that occurred while Quinn was advising that same client on antitrust issues.

As in those cases, this Court should disqualify Quinn from representing Plaintiff Hugh Edmundson ("Plaintiff") in this action.  The facts here present a textbook, indeed paradigmatic, case for disqualification.

A Direct and Incurable Conflict.  In July 2024, Defendant Pagaya Technologies Ltd. ("Pagaya") retained Quinn to provide legal advice on the enforceability of non-compete and non-solicitation provisions in its standard employment agreement.  Quinn initially advised on enforceability under New York law.  But in January 2025—after Pagaya acquired Theorem Technology, Inc. and Theorem Partners, LLC (collectively, "Theorem")—Pagaya asked Quinn for legal advice regarding the very same provisions under California law, where many Theorem employees were based.  Quinn gave that advice.

Two days later, Pagaya asked Quinn to review a draft separation and release agreement for Theorem employees.  Quinn initially agreed.  But the very next day, Quinn abruptly reversed course—without explanation—and refused to proceed.  Two weeks later, the reason became clear:  Quinn sent a demand letter on Plaintiff's behalf threatening legal action against Pagaya, citing the same non-compete and non-solicitation provisions about which Quinn had just advised Pagaya.  A few months later, Quinn filed this lawsuit, again alleging that Pagaya had violated the law by asking employees to sign agreements with the very same restrictive covenants on which Quinn had advised.

1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

Gibson, Dunn &
Crutcher LLP

Despite repeated requests from Defendants to withdraw, Quinn has refused, forcing Defendants to file this motion.

Disqualification Is Mandatory Under Rule 1.7(a). Quinn's representation of Plaintiff violates Rule 1.7(a) of the California Rules of Professional Conduct, which prohibits concurrent representation of clients with "directly adverse" interests in the same or even a separate matter. Of the two, concurrent representation in the same matter is the most egregious conflict—and that is precisely what happened here. *See People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1147 (1999).

Quinn advised Pagaya about its employment agreement provisions and then turned around and used that same subject matter—indeed, the same legal analysis—as the basis for a lawsuit against Pagaya. That is a direct and incurable conflict of interest. Rule 1.7(a) flatly prohibits Quinn's representation of Plaintiff, and disqualification is automatic. *City & Cnty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal.4th 839, 846 (2006).

Disqualification Also Required Under Rule 1.9(a). Pagaya's attorney-client relationship with Quinn was never terminated. But even if Quinn's misconduct were analyzed under Rule 1.9(a), which governs former-client conflicts, disqualification would still be required. Rule 1.9(a) bars a lawyer from representing a new client in a matter that is "substantially related" to the lawyer's prior representation, where the new client's interests are materially adverse to the former client's.

That standard is plainly met. Plaintiff's claims are based on the exact same provisions Quinn advised Pagaya about—raising the same legal questions, involving the same agreements, and targeting the same conduct. As a result, the matters are not merely related—they are the same. Disqualification is mandatory.

Quinn's Rationalizations Fail. Quinn's efforts to justify its conduct are meritless. Its purported ethical screen—seemingly implemented only after Pagaya brought the conflict to Quinn's attention—has no effect under California law. Ethical screens are only valid where the conflict is based on a lawyer's personal interest or work at a prior firm. Cal. R. Pro. Conduct R. 1.10(a)(1)-(2). Neither applies here.

Nor does Quinn's engagement letter waiver help. The waiver applies only to "other matters," not to conflicts arising in the same matter—as this one clearly does. Moreover, the waiver lacks the "informed written consent" required by Rule 1.9(a). *See Guardant Health, Inc. v. Foundation Medicine, Inc*., 2017 WL 5127733, at \*4 (N.D. Cal. Nov. 6, 2017) ("[C]oncurrent representation of clients whose interests are adverse is prohibited unless both clients give their informed consent. . . . Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one." (internal quotation marks omitted)). Courts have repeatedly rejected generic boilerplate waivers like Quinn's. *See United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*, 2018 WL 6619981, at \*6 (N.D. Cal. Dec. 18, 2018).

A Pattern of Side-Switching Abuse. This is not an isolated lapse—it is part of a pattern. Quinn has now been disqualified multiple times for suing its own clients. The firm's repeated side-switching, unexplained reversals, and disregard for basic ethical boundaries reflect systemic failure, not mistake. The Court should not countenance it.

This is a paradigm case for disqualification. Quinn acted directly against its own client in the same matter on which it had just provided legal advice. That is the very definition of an incurable conflict of interest. The California Rules of Professional Conduct require Quinn's immediate disqualification from this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Quinn Advises Pagaya Regarding The Non-Compete and Non-Solicitation Provisions In Its Standard Employment Agreement.

In July 2024, Pagaya retained Quinn to enforce the non-compete and non-solicitation provisions in Pagaya's standard employment agreement against several departing employees. *See* Declaration of Eric Watson in Supp. of Mot. to Disqualify ("Watson Decl."), ¶ 2. The engagement letter was signed by Eric Watson, Pagaya's Chief Legal Officer, on Pagaya's behalf, and Kimberly Carson on Quinn's behalf. *Id.*, ¶ 2, Ex. 1.

Quinn performed extensive work for Pagaya. Among other things, it prepared cease-and-desist letters, a draft complaint, a draft TRO, and declarations. *Id.*, ¶¶ 3–4, Exs. 2–5. Quinn also participated in calls and meetings with Pagaya leadership, including its CEO, concerning strategies for pursuing

3

Gibson, Dunn & Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

and potentially resolving its dispute with the departing employees. *Id.*, ¶ 3. As part of these discussions, Pagaya discussed and shared with Quinn confidential information concerning its litigation and settlement strategies and tolerance. *Id.* In addition, separate from the employee dispute itself, Pagaya sought and received advice from Quinn about ways to strengthen Pagaya's standard employment agreement going forward, including with respect to the enforceability of its non-compete and non-solicitation provisions under New York law. *Id.*, ¶ 4. For instance, Quinn billed for ████ ████████████████████████████████████" and "████████████████████████████ ████████████████████" *Id.*, Ex. 2 at 2. In September 2024, before any lawsuit had been filed, Pagaya reached a resolution with the departing employees. *Id.*, ¶ 5. In total, through the end of September, Quinn billed Pagaya approximately $196,000 in fees with four separate timekeepers billing approximately 137.7 hours in total. *Id.*, ¶ 4, Exs. 2, 3, 4, 5.

Quinn's relationship with Pagaya did not end with the resolution of the employee dispute; rather Quinn continued to advise Pagaya regarding its standard employment agreement. *Id.*, ¶¶ 5-6. On January 3, 2025, Ms. Carson invited Pagaya to an open house at Quinn's office for "trusted clients." *Id.*, Ex. 6. A few days later, on January 8, 2025, Mr. Watson emailed Ms. Carson to discuss an employment issue in connection with Pagaya's acquisition of Theorem. *Id.*, ¶ 6, Ex. 7. Specifically, Mr. Watson sought advice regarding the enforceability of the non-compete and non-solicitation provisions in its agreements with Theorem employees in California. *Id.* Ms. Carson called on January 14, 2025, and provided the requested advice, which Pagaya specifically relied on in its dealings with the new Theorem employees. *Id.*

Eight days later, on January 16, 2025, Natalie Wilmore, Pagaya's Deputy General Counsel, emailed Ms. Carson to ask her to review and advise on a separation and release agreement in connection with the Theorem acquisition. *Id.*, ¶ 7, Ex. 8. Ms. Wilmore attached a marked-up draft separation and release agreement in which she "highlighted a few sections" for discussion, including ones relating to the employee's compliance with non-compete and non-solicitation covenants in Pagaya's standard employment agreement. *Id.* The marked-up draft included Ms. Wilmore's comments and questions to Ms. Carson. *Id.* That same day, Ms. Carson responded, "Yes will take a look." *Id.*

Gibson, Dunn &
Crutcher LLP

The next day, Ms. Carson changed her tune. *Id.*, ¶ 8, Ex. 9. She now claimed—without explanation—that "we are not in a position to assist Pagaya on the below." *Id.* Although Ms. Carson did not explain the reason for her sudden about-face, Quinn subsequently claimed that Ms. Carson declined the assignment because she ran a conflict check. Declaration of Katherine V.A. Smith in Supp. of Mot. to Disqualify ("Smith Decl."), Ex. F at 2.

**B.** **Quinn Threatens To Assert Claims Against Pagaya Based On The Non-Compete and Non-Solicitation Provisions In Its Standard Employment Agreements.**

On February 3, 2025, just two weeks later, Quinn sent a letter to Mr. Watson threatening to assert claims against Pagaya on Plaintiff's behalf. Watson Decl. ¶ 9, Ex. 10. Quinn accused Pagaya of engaging in an "ongoing and escalating pattern of unlawful conduct" and demanded that Pagaya take "corrective action." *Id.*, Ex. 10 at 1, 5. In particular, Quinn asserted that Pagaya was "violat[ing] state law by demanding Theorem employees sign employment contacts containing illegal non-compete and non-solicitation provisions." *Id.* at 4. Notably, Quinn claimed that Pagaya had been "alerted" that the provisions were "unlawful, but it proceeded anyway." *Id.*

In addition, Quinn's letter included a document preservation demand. *Id.* at 7–9. Among other things, Quinn demanded that Pagaya "immediately take all necessary steps to preserve any such materials and data existing in any form whatsoever, that are ***actually or potentially relevant***," including documents and communications (1) "referring or relating to any ***employment terms***" and (2) "related to workforce reductions, termination, ***severance agreements***, or efforts by Theorem ***to terminate or modify the terms of employment*** for its workforce." *Id.* at 7–8 (emphases added). On its face, Quinn's demand encompasses documents and communications relating to Quinn's legal advice to Pagaya.

**C.** **Pagaya Promptly Objects To Quinn's Representation of Plaintiff.**

On February 10, 2025, Pagaya, through Proskauer Rose LLP, responded to Quinn's letter. Smith Decl. ¶ 2, Ex. A. In addition to rebutting Quinn's baseless allegations, Pagaya noted that Quinn had "provided legal advice to Pagaya . . . related to the enforceability of employment agreements," and demanded that it withdraw from representing Plaintiff. *Id.*, Ex. A at 3. Quinn refused.

On March 28, 2025, Pagaya, through Gibson Dunn, reiterated its demand that Quinn withdraw. *Id.*, ¶ 3, Ex. B at 11. Pagaya explained that it "regularly sought and received advice on employment

matters—including on the very non-compete and non-solicitation provisions that [Plaintiff] and you have put at issue—from [Ms. Carson]," and that "it appears [Quinn] may have been advising both sides of this dispute at the same time in clear violation of the law and your obligations to Pagaya." *Id.*

Quinn did not provide a substantive response to Pagaya's demand that it withdraw. *Id.*, Exs. C, D. Accordingly, on April 23, 2025, Pagaya repeated its withdrawal demand. *Id.*, Ex. E at 2.

On April 24, 2025, Harry Olivar, Jr., Quinn's General Counsel, responded. *Id.*, ¶ 7, Ex. F. Mr. Olivar confirmed that Ms. Carson provided advice regarding the enforceability of Pagaya's non-competition and non-solicitation provisions under California law but denied that her advice was substantially related to the matter in which Quinn was representing Plaintiff against Pagaya. *Id.*, Ex. F at 1–2. Mr. Olivar also confirmed that after receiving Ms. Wilmore's email on January 16, 2025, Ms. Carson performed a "conflict check" which "confirmed" that Quinn could not advise Pagaya regarding the agreement. *Id.* at 2. While Mr. Olivar did not disclose the contents of the conflict check, the clear implication was that it disclosed Quinn's representation of Plaintiff in a matter adverse to Pagaya. Yet, Quinn did not decline to represent Plaintiff, despite knowing that Plaintiff's interests were adverse to Pagaya. Finally, Mr. Olivar asserted that Pagaya waived any conflict when it executed the engagement letter and that Quinn had implemented an ethical screen. *Id.*

On May 19, 2025, Pagaya responded to Mr. Olivar's letter. Smith Decl., Ex. G. Pagaya noted that Mr. Olivar's letter was "premised on [the] false assumption" that Quinn's work for Pagaya was "limited to New York employment issues." *Id.* at 1. That was wrong. In fact, Quinn's initial work for Pagaya in July 2024 related to its dispute with departing employees was not limited to New York and included employees based in other states. *Id.*; Watson Decl. ¶ 2. Regardless, "Pagaya sought and received advice from [Ms. Carson] as recently as January 14, 2025, on the enforceability of non-compete and non-solicitation provisions in employment agreements provided to Theorem employees in California," which are "the very same provisions and agreements that [Plaintiff] and your firm have put at issue." Smith Decl., Ex. G at 1. Pagaya also explained that Quinn's belated implementation of an ethical screen did not cure the conflict and that the advance waiver in Quinn's engagement letter did not apply because Quinn's representation of Plaintiff was not an "other matter[]" because "it relates in

Gibson, Dunn &
Crutcher LLP

part to the exact same non-compete and non-solicitation provisions on which Pagaya received advice from Ms. Carson." *Id.* at 2.

On May 28, 2025, Mr. Olivar responded to Pagaya's letter. *Id.*, Ex. H. Mr. Olivar argued that there was no conflict because (1) Ms. Carson "declined" to review the separate and release agreement, (2) Quinn's work for Plaintiff is not "substantially related" to Quinn's work for Pagaya, (3) Pagaya did not share any confidential information with Quinn, and (4) Pagaya waived any conflict. *Id.* at 2.

**D.    Quinn Sues Pagaya On Plaintiff's Behalf Based In Part On The Non-Compete and Non-Solicitation Provisions In Pagaya's Standard Employment Agreement on which Quinn Had Advised Pagaya.**

Plaintiff was terminated for cause on April 27, 2025, Dkt. 12 ¶ 7, after he attempted to wire more than $100 million from Theorem's accounts without authorization and then lied—both internally and to independent investigators—to cover it up. Following his termination, Plaintiff initiated a calculated campaign to harm the business Pagaya had acquired—reaching out to investors and customers in an effort to erode confidence in Theorem and disrupt Pagaya's operations.

On June 4, 2025, Plaintiff, through Quinn, filed suit against Defendants in California state court despite knowing that Mr. Edmundson's claims were subject to a binding arbitration agreement—blatantly violating the arbitration agreement and placing baseless allegations on the public docket to generate media attention and further damage Pagaya's reputation. *See* Dkt. 1-3 ("Compl."). The complaint alleges, *inter alia*, that Defendants "implemented illegal employment agreements containing unenforceable non-compete clauses in violation of California law, despite being informed these provisions were unlawful. . . ." *Id.* ¶ 9. Three of the complaint's causes of action are based, in part, on the allegedly unlawful employment agreements, including the Second Cause of Action for Retaliation in Violation of California Government Code § 12940(h), the Fourth Cause of Action for "Wrongful Termination in Violation of Public Policy," and the Tenth Cause of Action for Violation of California Business & Professions Code § 17200. *Id.* ¶¶ 126, 146, 200.

On June 13, 2025, Pagaya, through Gibson Dunn, asked Quinn again to withdraw. Smith Decl., Ex. I. Pagaya explained that "Pagaya sought and received legal advice . . . that concerned the identical agreements and legal issues raised in [Plaintiff's] complaint," that Quinn's attempt to avoid the conflict

7

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
QUINN EMANUEL URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF
CASE NO. 3:25-CV-06029-JSC

by dropping Pagaya like a "hot potato" is "both ethically indefensible and legally impermissible," and that even if Quinn "could plausibly argue that its representation ended with the January 14 call (it cannot), the conflict would still be fatal" because "the issues Quinn now raises against Pagaya are substantially—and in fact directly—related to the advice it provided to Pagaya just months ago." *Id.* at 1–2.

To date, Quinn has not responded to Pagaya's letter. *Id.*, ¶ 10.

### III.    LEGAL STANDARD

Motions for disqualification are governed by state law. *Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*, 659 F. Supp. 3d 1061, 1066 (N.D. Cal. 2023). *See also* Civ. L.R. 11-4(a)(1) ("Every member of the bar of this Court and any attorney permitted to practice in this Court . . . must . . . comply with the standards of professional conduct required of members of the State Bar of California[.]"). Under California law, in deciding motions to disqualify, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil*, 20 Cal.4th at 1145 (citations omitted).

### IV.    ARGUMENT

**A.    Because Pagaya Was a Current Client and Pagaya's and Plaintiff's Interests Were Directly Adverse, Disqualification Is Automatic.**

Quinn should be disqualified because its representation of Plaintiff is and was directly adverse to Pagaya, a current client. Rule 1.7 governs concurrent conflicts. It provides, in relevant part, that "[a] lawyer shall not, without informed written consent from each client . . . , represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. R. Pro. Conduct R. 1.7(a). "The duty of undivided loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed written consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." *Id.*, Rule 1.7 cmt. [1]. *See also Sharp v. Next Ent., Inc.*, 163 Cal. App. 4th 410, 428 (2008) ("[A]n attorney cannot represent a client in one matter and simultaneously sue that client in an unrelated matter.").

Concurrently representing adverse clients in the same matter is the "most egregious conflict of interest." *SpeeDee Oil*, 20 Cal.4th at 1147. "Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences." *Id.* In that situation, "[w]ith few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." *Id.* *See also Cobra Sols.*, 38 Cal.4th at 846 (an attorney who "seeks to simultaneously represent clients with directly adverse interests in the same litigation will be automatically disqualified"); *Flatt v. Superior Ct.*, 9 Cal.4th 275, 284 (1994) (with few exceptions, "the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one," even if the matters "have nothing in common" and there is "no risk" that confidences will be disclosed).

Quinn's representation of Plaintiff clearly violates Rule 1.7.

### 1.    Adversity

There is no question that the interests of Pagaya and Plaintiff were and are directly adverse. As the comments to Rule 1.7 recognize, a "directly adverse conflict" may arise when "a lawyer, while representing a client, accepts in another matter the representation of a person who, in the first matter, is directly adverse to the lawyer's client." Cal. R. Pro. Conduct R. 1.7 cmt. [1]. That is precisely what happened here. Quinn, while advising Pagaya regarding the non-compete and non-solicitation provisions applicable to Theorem employees based in California, agreed to represent Plaintiff in connection with threatening legal action against Pagaya based in part on Pagaya's inclusion of those very same non-compete and non-solicitation provisions in agreements with Theorem employees based in California. A more directly adverse conflict can hardly be imagined. "The basic conflicts rule, of course, is that a lawyer may not sue Client *A* on behalf of Client *B* while simultaneously representing *A*, even in a completely unrelated matter." Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility § 1.7–5 (2024–2025 ed.). Quinn violated that "basic conflicts rule." *Id. See also Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1055–56 (1992), *reh'g denied and opinion modified* (June 10, 1992) (affirming disqualification where

law firm, "knowing that it was representing [Client A] in the wrongful termination cases, nevertheless agreed to begin representing [Client B] against [Client A] in the insurance coverage case").

### 2.    Concurrent Representation

The evidence is overwhelming that Quinn concurrently represented Pagaya and Plaintiff. An attorney-client relationship between Quinn and Pagaya clearly existed on January 14, 2025, when Pagaya sought legal advice regarding the enforceability of the non-compete and non-solicitation provisions in California and ***Quinn provided that advice***. "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*." *SpeeDee Oil*, 20 Cal.4th at 1148 (1999) (quotations omitted). *See also Wood v. Superior Ct.*, 46 Cal. App. 5th 562, 581 (2020), *as modified* (Apr. 8, 2020) ("Ordinarily, when a party seeks legal advice from a lawyer, and the lawyer provides such advice, an attorney-client relationship is formed.").[2]

An attorney-client relationship also clearly existed on January 16, 2025, when Pagaya asked Quinn to review the separation and release agreement and ***Quinn agreed to do so***. *See, e.g.*, Restatement (Third) of the Law Governing Lawyers § 14 (2000) (attorney-client relationship arises when "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person" and "***the lawyer manifests to the person consent to do so***") (emphasis added); 23 Williston on Contracts § 62:3 (4th ed.) (attorney-client relationship is implied when "a person seeks advice or assistance from an attorney" and "the attorney ***expressly or impliedly agrees to give*** or actually gives ***the desired advice or assistance***") (emphasis added).

Although Quinn has not disclosed when it took on Plaintiff as a client, it must have done so before January 17, 2025—at which time it represented Pagaya—when Ms. Carson told Pagaya that she "was not in a position to assist." Watson Decl., Ex. 9 at 1. As Mr. Olivar admitted, Mrs. Carson declined to review the separation agreement because she performed a "conflict check" which "confirmed" there was a conflict. Smith Decl., Ex. F at 2. This means Quinn must have been hired by

---

[2] The time that Quinn spent providing the advice is irrelevant. Even "the briefest conversation" suffices to establish an attorney-client relationship. *SpeeDee Oil*, 20 Cal. 4th at 1148 (quotations omitted). Nor does it matter whether Quinn billed its time. *See, e.g.*, *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 79 Cal. App. 4th 114, 126 (2000), *as modified* (Mar. 17, 2000) ("An attorney-client relationship can be formed though . . . no fees are paid.").

Gibson, Dunn &
Crutcher LLP

1    Plaintiff prior to January 17 and, thus, concurrently represented both Plaintiff and Pagaya for a period

2    of time prior to Mrs. Carson's email.  This alone violates Rule 1.7(a) because Quinn could not ethically

3    have agreed to represent Plaintiff in a matter adverse to Pagaya, a current client.  *See, e.g.*, *Bd. of Trs.*

4    *of Leland Stanford Junior Univ.*, 659 F. Supp. at 1068 ("[N]either the amount of work of performed

5    . . . , the length of the concurrent relationship, nor the fact that the lawyer's relationship with one of the

6    adverse parties may have terminated after a period of concurrent representation are relevant to the

7    question of whether Rule 1.7 has been violated.").  Yet, it not only agreed to take on Plaintiff as a

8    client—but to threaten claims against Pagaya on Plaintiff's behalf.

9          Nor did Quinn's representation of Pagaya end on January 17, 2025, when Ms. Carson declined

10    to review the separation and release agreement.  Pagaya could not reasonably have inferred from Ms.

11    Carson's email that Quinn was terminating the engagement, and "courts are properly reluctant to

12    impose on a client the burden of discerning that a law firm that has done periodic work for it has ceased

13    to be the client's attorney." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal.5th 59,

14    82–83 (2018).  To this day, Quinn has not formally terminated the engagement.

15          In any event, an attorney "cannot avoid the automatic disqualification rule applicable to

16    concurrent representation by unilaterally converting a present client into a former client[.]" *State Farm*

17    *Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1431 (1999).  The "hot potato" rule prevents

18    attorneys from "curing dual representation conflicts by the expedient of severing the relationship with

19    the pre-existing client." *Flatt*, 9 Cal.4th at 288.  Thus, when a lawyer attempts to cure a conflict by

20    dropping one client like a "hot potato," courts will "treat the lawyer's withdrawal ***as if it did not occur***."

21    ABA Formal Op. 25-516 (emphasis added).  Here, Ms. Carson supposedly declined to review the

22    separation and release agreement on January 17 because she identified a conflict after running a

23    "conflicts check." Yet, Quinn did ***not*** decline to represent Plaintiff, as it should have.  It obviously was

24    attempting to drop Pagaya so it could take on Plaintiff.  But the conflict already existed.  And the "hot

25    potato" rule does not permit Quinn to "abruptly sever[] its relationship with [Pagaya] and then avoid

26    disqualification based on the comparatively little work performed during the period of concurrent

27    representation[.]" *Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079, at *5 (C.D. Cal. Dec. 5, 2016).

28

Gibson, Dunn &
Crutcher LLP

Thus, Pagaya was still Quinn's client when it sent the demand letter two weeks later.

**B.    Even if Pagaya Were a Former Client, Disqualification Would be Required Because This Action Would be Substantially Related To Quinn's Prior Work For Pagaya.**

Even assuming Pagaya was a former client when Plaintiff retained Quinn, Quinn should be disqualified because this action is substantially related to Quinn's prior work for Pagaya.

Rule 1.9 provides, in relevant part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the ***same or a substantially related matter*** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R. Pro. Conduct R. 1.9(a) (emphasis added). Two matters are the "same or substantially related" if there is a "substantial risk" that the lawyer may violate the duties of loyalty and confidentiality. *Id.*, Rule 1.9(a) cmt. [1], [3]. A substantial risk exists if "the matters involve the same transaction or legal dispute or other work performed by the lawyer for the former client" or "the lawyer normally would have obtained [confidential] information in the prior representation . . . and the lawyer would be expected to use or disclose that information in the subsequent representation because it is material to the subsequent representation." *Id.*, Rule 1.9 cmt. [3].

Courts apply the "substantial relationship" test to determine whether the matters are "substantially related." *Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485, 506 (2022). *See also Flatt*, 9 Cal.4th at 283 ("[W]here a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a 'substantial relationship' between the subjects of the antecedent and current representations."). Where a substantial relationship is established, "access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Id.* at 283 (emphasis in original).

Courts consider three factors in determining whether a substantial relationship exists:  "(1) similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement in the cases." *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068,

12

Gibson, Dunn &
Crutcher LLP

1081 (C.D. Cal. 2012). Here, all three factors show a substantial relationship: (1) the same non-compete and non-solicitation provisions that were the subject of Quinn's legal advice to Pagaya are the basis for Plaintiff's claims against Defendants; (2) Plaintiff's allegation that those restrictive covenants are unenforceable poses the same legal question that Pagaya posed to Quinn; and (3) Quinn attorneys were "personally involved" in advising Pagaya. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 709 (2003). Indeed, Quinn has demanded that Pagaya preserve documents and communications (1) "referring or relating to any **employment terms**" and (2) "related to workforce reductions, termination, **severance agreements**, or efforts by Theorem **to terminate or modify the terms of employment** for its workforce"—which necessarily implicates Quinn's own legal advice. Watson Decl., Ex. 10 at 7-8 (emphases added). Thus, by Quinn's own admission, the matters are substantially related.

That Quinn provided advice to Pagaya in a non-litigation context is irrelevant. "The test has never been the identity of the specific tasks the attorney was asked to perform in either representation." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 681 (2004). Rather, courts consider "the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." *Id.* (quotations omitted). Thus, "[a]n attorney who, in the former representation of an insurance company, prepared a form of insurance policy for the company's use cannot in the second representation sue the insurance company for a breach of that policy on behalf of a person to whom a form of the policy was subsequently issued . . . Though the services are distinct, the representations are substantially related because they both center on the terms and conditions of the single policy form which was the handiwork of the lawyer." *Id.* at 682. Here, Quinn advised Pagaya regarding the exact same non-compete and non-solicitation provisions that are the basis for Plaintiff's claims against Pagaya. As such, the matters are substantially related because they "center on the terms and conditions" of the contract provisions that Quinn reviewed and commented on. *See id.*

Quinn does not dispute that the two matters involve the same provisions. Rather, it insists there is no substantial relationship because it says it did not acquire any confidential information regarding the provisions or their application to the Theorem employees. But Quinn **did** acquire confidential

information.  "[A]ll attorney-client communications are presumptively confidential." *City Nat. Bank v. Adams*, 96 Cal. App. 4th 315, 328 (2002).  On January 16, 2025, Pagaya shared confidential information with Quinn regarding the Theorem acquisition, including its plans to "let go" of Theorem employees.  Watson Decl., ¶ 7, Ex. 8.  Pagaya even shared a marked-up draft of the separation agreement that includes Ms. Wilmore's comments and questions.  *Id.*  And on January 14, 2025, Pagaya sought and Quinn provided legal advice regarding the enforceability of its standard non-compete and non-solicitation provisions in connection with onboarding new Theorem employees based on California, following the Theorem acquisition.  That advice is presumptively confidential, even if—as Quinn asserts—it involved "general guidance about well-established California law." Smith Decl., Ex. H at 1.  Regardless, "it is well-established that proof of actual possession of confidential information is not necessary to disqualify the former attorney." *Beltran*, 867 F. Supp. 2d at 1077.  Where a substantial relationship exists, "access to confidential information . . . is *presumed*." *Flatt*, 9 Cal.4th at 283 (emphasis in original).  *See also Adams*, 96 Cal. App. at 327 ("[I]f the nature of the representation is such that confidences could have been exchanged between the lawyer and the client, courts will conclusively presume they were exchanged, and disqualification will be required.") (emphases in original).[3]

### C.    Quinn's Alleged Ethical Screen Is Ineffective.

Quinn's belated implementation of a vague and undefined ethical screen does not cure the conflict.  Rule 1.10 governs the imputation of conflicts.  It provides, in relevant part, that no attorney

---

[3] Quinn has argued its advice to Pagaya on the enforceability of non-compete and non-solicitation provisions under California law cannot create a conflict because, Quinn says, Ms. Carson provided "only general guidance about well-established California law that categorically prohibits employee non-compete agreements," which "information is readily available."  Smith Decl., Ex. H at 1.  This argument goes nowhere.  To the contrary, the issues are nuanced and can turn on the specific facts and circumstances of the employment relationship, which is precisely the reason Pagaya sought (and received) Quinn's legal advice.  *See Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 281 (1985) (holding that employee non-solicitation agreements are enforceable under California law); *cf. AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 939 (2018) (noting "doubt[s] [about] the continuing viability of [*Loral*]," but nevertheless evaluating the agreement at issue using the *Loral* reasonableness standard and finding *Loral* "factually distinguishable"); *see also NuVasive, Inc. v. Miles*, 2018 WL 4677607, at *6 (Del. Ch. Sept. 28, 2018) ("Upholding the Delaware choice of law and thereby potentially enforcing the covenant not to compete would not violate California's fundamental public policy," where case fell into a "narrow exception").

14

in a law firm may "knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9." Cal. R. Pro. Conduct R. 1.10(a). California courts have long recognized the rule of vicarious disqualification. *See SpeeDee Oil*, 20 Cal.4th at 1139 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."). "By recognizing the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information . . . the vicarious disqualification rule safeguards clients' legitimate expectations that their attorneys will protect client confidences." *In re Charlisse C.*, 45 Cal.4th 145, 161 (2008) (quotations and citations omitted) (cleaned up).

There are only two exceptions. First, there is no imputation where the conflict is "based on a ***personal interest*** of the prohibited lawyer." Cal. R. Pro. Conduct R. 1.10(a)(1) (emphasis added). Second, there is no imputation where the conflict arises out of the lawyer's association "***with a prior firm***" so long as: (1) the lawyer did not "substantially participate" in the same or a substantially related matter at her prior firm, (2) the lawyer is "timely screened" from participating in the current matter and is "apportioned no part of the fee," and (3) written notice is "promptly" given to the former client, including "a description of the screening procedures employed." *Id.*, Rule 1.10(a)(2) (emphasis added).

Neither exception applies here. The first exception does not apply because Ms. Carson's conflict is not based on a personal interest, and the second exception is inapplicable because Ms. Carson's conflict arises out of her representation of Pagaya ***at Quinn***. Accordingly, Ms. Carson's "disqualification extends vicariously to the entire firm." *X Corp.*, 2024 WL 3408220, at *9. As a result, Quinn's alleged screen is ineffective because "[s]creening lawyers or offices is no fix in these circumstances: Quinn is Quinn." *Id.*; *see also KBS Holdco, LLC v. City of W. Hollywood*, 2023 WL 9687607, at *5 (C.D. Cal. Sept. 15, 2023) ("An ethical screen would only cure the conflict if the prohibited representation arose from an attorney's association with a ***prior*** law firm—not based on the attorney's prior representation of the client while associated with the challenged law firm.") (emphasis in original).[4]

---

[4] Even assuming Ms. Carson's conflict had arisen out of work at a prior firm, there is no evidence that the alleged screen was timely implemented or that Quinn provided prompt notice.

Gibson, Dunn &
Crutcher LLP

**D.    Quinn's Advance Waiver Is Inapplicable, Invalid, And Ineffective.**

The advance waiver in Quinn's engagement letter with Pagaya does not apply and is invalid and ineffective. On its face, the waiver is limited to "other matters." *See* Watson Decl., Ex. 1 at 4–5. But this is not an "other matter[]" because Plaintiff is suing Pagaya over the same restrictive covenant provisions about which Quinn advised Pagaya. Quinn advised Pagaya regarding the enforceability of the provisions in California where the Theorem employees were based, and is now suing Pagaya over the very same provisions. Thus, because this is the same matter, the waiver does not apply.

In any event, the waiver is invalid because it does not provide informed consent. Under the California Rules, "informed consent" "means a person's agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the ***relevant circumstances*** and (ii) the ***material risks***, including any actual and reasonably foreseeable adverse consequences of the proposed course of conduct." Cal. R. Pro. Conduct R. 1.01(e) (emphases added). While a lawyer does not need to disclose "every possible consequence of a conflict," "the closer the lawyer . . . can get to circumstances where not only the actual adverse client but also the actual potential future dispute are identified, the more likely the prospective waiver is ethically permissible." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1105, 1107 (N.D. Cal. 2003) (quotations omitted). In short, "[t]he more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences to the client of those representations, the greater the likelihood that the client will have the requisite understanding." Cal. R. Pro. Conduct R. 1.7 cmt. [9].

Quinn's waiver discloses none of the relevant circumstances or material risks. It states only that Quinn "may currently or in the future represent one or more other clients in matters involving Pagaya and we may represent the parties that are adverse to you in this matter in other matters." Watson Decl., Ex. 1 at 4.[5] This is precisely the kind of "generic" and "boilerplate" waiver language that courts reject because it "fail[s] to provide any information, much less reasonably adequate information, about the risk of conflicts." *Sauer*, 2018 WL 6619981, at *6. "It does not identify a potentially adverse client, the types of potential conflicts, or the nature of the representative matters." *W. Sugar Coop. v.*

---

[5] While the engagement letter discusses "Restructuring Matters" and "Multi-Party Matters," this action does not fall into either category. Watson Decl., Ex. 1 at 5–6.

16

Gibson, Dunn & Crutcher LLP

*Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1083 (C.D. Cal. 2015). It "awards [Quinn] an almost blank check." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 820 (N.D. Cal. 2004). Moreover, the "breadth" and "temporal scope" of the waiver is open-ended. It purports to waive conflicts indefinitely. Courts will not enforce "broad, general, and indefinite" waivers like Quinn's. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1118 (E.D. Cal. 2015). Additionally, once Quinn began representing Plaintiff, it was required to disclose the conflict if it wanted to obtain informed consent. *See* Cal. R. Pro. Conduct R. 1.7 cmt [10] ("A material change in circumstances relevant to application of this rule may trigger a requirement to make new disclosures and, where applicable, obtain new informed written consents."). It never did.

Finally, the waiver is ineffective because a client cannot consent where the representation "involve[s] the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Cal. R. Pro. Conduct R. 1.7(d)(1), (3). Here, Quinn is asserting claims against Pagaya in connection with the same matter in which Quinn advised Pagaya. Thus, the conflict is not waivable.

## V.    CONCLUSION

For all of these reasons, the Court should disqualify Quinn as counsel for Plaintiff in this action.

DATED: July 31, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Katherine V.A. Smith*
        Katherine V.A. Smith

Attorneys for Defendants
PAGAYA TECHNOLOGIES LTD., THEO-REM TECHNOLOGY, INC., THEOREM PARTNERS, LLC

17

Gibson, Dunn &
Crutcher LLP