# EXHIBIT B

# GIBSON DUNN

Orin Snyder
Partner
T: +1 212.351.2400
M: +1 917.239.3977
osnyder@gibsondunn.com

March 28, 2025

Via E-Mail

Diane M. Doolittle, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139

Re:     Hugh Edmundson

Dear Diane:

We represent Pagaya Technologies Ltd., Pagaya Investments US LLC (collectively, "Pagaya" or the "Company") and Theorem Partners LLC and write regarding Hugh Edmundson's serious misconduct, as well as to respond to the claims you have asserted against Pagaya on his behalf.  Moving forward, all correspondence concerning Mr. Edmundson should be directed to our firm.

Since receiving your February 3, 2025, letter, Pagaya has conducted a thorough, independent investigation into Mr. Edmundson's allegations, performed by counsel that has been engaged directly by Pagaya's audit committee.  The results are clear:  his alleged claims and concerns are in all cases moot, pretextual, or entirely false.

Mr. Edmundson's misconduct, on the other hand, raises grave concerns.  Despite Pagaya's good-faith efforts to address Mr. Edmundson's concerns and provide the support Mr. Edmundson needed to maintain his team, Mr. Edmundson has violated his obligations and engaged in deceit and obstruction in a desperate attempt to maintain control of a company *he sold*.  He has gone as far as to attempt to weaponize his personal grievances by falsely styling himself as a "whistleblower."  Feb. 3, 2025 Letter from D. Doolittle at 1.  None of these tactics will succeed.  Instead, they only highlight Mr. Edmundson's pattern of bad faith and deceptive conduct since Pagaya's acquisition of Theorem Technology, Inc. and its investment adviser Theorem Partners LLC (together, "Theorem") (the "Merger").

Mr. Edmundson's conduct and management of Theorem both before and after the Merger exposes him to substantial liability for breach of his fiduciary and ethical duties to Pagaya, Theorem, and investors in the Theorem funds.  His conduct also exposes Theorem's officers and legacy employees to scrutiny of their conduct—including conduct with respect to investors in the Theorem funds and conduct during merger negotiations (including representations Theorem's senior officers made about Theorem's overall historical

Diane M. Doolittle, Esq.                                                    March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                             Page 2

performance and risk/research capabilities) leading to the July 27, 2024 Agreement and Plan of Merger ("Merger Agreement").  Pagaya will pursue all available remedies regarding any such misconduct or breaches of representations, obligations, or duties by any member of the Theorem team, including Mr. Edmundson and the legacy Theorem executives and employees.

We have read your barrage of hyperbolic letters, and we know the Quinn Emanuel playbook well.  Your claims and allegations of wrongdoing are simply false.  Under the actual facts and the law, your client has no valid complaints and faces serious legal exposure.  The fact that you appear to be violating the ethical rules by taking an adverse position to Pagaya on employment agreement issues less than a month after your firm advised Pagaya on the same issues raises serious concerns.  We address this additional concern below, and Pagaya reserves all rights regarding this conflict.

Pagaya has taken Mr. Edmundson's allegations seriously, has investigated them at considerable expense, and has determined they are unfounded.  In light of these efforts and Mr. Edmundson's serious misconduct, its patience has run out.  Pagaya intends to continue to fully investigate Mr. Edmundson's actions at Theorem, including from before the Merger, and will assert all appropriate claims against him, including those detailed below.

## I.    Mr. Edmundson's Misconduct and Pattern of Deception.

### a.    Mr. Edmundson's Obstruction of Efforts To Integrate Theorem into Pagaya, Deploy Capital, and Appoint TIC Members.

Mr. Edmundson founded Theorem in 2014.  Since at least 2022, the Theorem funds have been plagued by poor returns and ever-increasing redemption requests from investors.  Presumably at the urging of Theorem's shareholders, Mr. Edmundson was compelled to hire Ryan Podolsky as Chief Operating Officer of Theorem in 2022.  According to numerous Theorem employees, Mr. Podolsky's task was not to try and right a sinking ship but rather to find a life raft for Theorem employees and investors, and he did so in the form of a sale to Pagaya.

Despite its poor performance, Pagaya saw opportunity in Theorem.  By adding Pagaya's superior industry and capital markets expertise, more robust risk management, and stronger relationships with lending channels, Pagaya believed Theorem could succeed. But in order to do so, it was clear that changes needed to be made:  Pagaya's diligence revealed that Theorem investors suffered the consequences of a deficient risk-management framework resulting in Theorem exposing investors to high-risk lending

Diane M. Doolittle, Esq.                                                    March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                            Page 3

partners, including to loans originated by a party in bankruptcy.  Worse, Theorem had continued increasing exposure to loans originated by this party until the day before the bankruptcy.  These practices suggest a disregard on the part of Mr. Edmundson of his fiduciary duties to the Theorem funds and their investors.  On its own, it was clear Theorem's days were numbered.

Mr. Podolsky, not Mr. Edmundson, largely negotiated all aspects of the Merger with Pagaya.  Recognizing that Theorem needed Pagaya's stronger risk management and infrastructure, Theorem agreed to be bound by Schedule 1.1(i) of the Merger Agreement (the "Operating Principles"), which allowed Pagaya to "determine" investment options available to the Theorem funds.  These terms were necessary and Pagaya would not have bought Theorem without Theorem's and Mr. Edmundson's agreement that Pagaya could control the risk management framework around which investments were available to avoid future losses in line with Theorem's historical performance.

At the time the Merger closed in October, Theorem had no clear path to survive as a standalone entity:

- Theorem faced a declining fee base that could not support its cost structure without a significant reduction in personnel.

- Approximately 84% Theorem's Main fund NAV and approximately 86% of Theorem's Prime+ fund NAV was in the redemption process, either receiving amortized withdrawal class ("AWC") payments or in AWC Confirmed status, with redemptions continuing to grow.  These funds continued to suffer from poor returns at the time of the closing.

Pagaya's acquisition of Theorem closed in October for an initial purchase price of $17.5 million—a comparatively low price reflecting the stark reality of Theorem's value.  Mr. Edmundson and the other Theorem sellers received the purchase price as compensation for selling their stakes in Theorem and retained the right to potentially earn more in deferred compensation.  But despite this financial windfall—which represented the best possible outcome for himself and the other Theorem sellers—it is clear Mr. Edmundson never accepted the reality of the sale, and he has repeatedly resisted efforts to integrate the companies.  For example:

- Under his leadership, more than half of Theorem's employees have elected to leave Theorem.  This departure rate is shocking given that Mr. Podolsky fought for (and Pagaya agreed to) guarantees that the vast majority of Theorem's employees would be retained for at least six months to a year following the

Diane M. Doolittle, Esq.                                      March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                Page 4

Merger.  Operating Principles § 8.  Five months later—during which time Mr. Edmundson has led Theorem as its Chief Investment Officer and then CEO—most are gone, having left voluntarily.  This obviously calls into question Mr. Edmundson's leadership.

- Mr. Edmundson, as chair of the Theorem Investment Committee ("TIC"), repeatedly blocked capital deployment opportunities, in an apparent effort to sabotage the success of the combined company and in violation of his fiduciary duty to act in the best interest of the fund investors—choosing to invest only 36% of available opportunities in January 2025 and 31% in February 2025—while falsely blaming Pagaya for underinvestment.

- Mr. Edmundson simultaneously pushed the TIC to invest in historical Theorem channels despite objections and warnings by Pagaya and the Pagaya Capital Deployment Committee ("PCDC") that these channels presented significant risk and compliance concerns.  These risks were not merely theoretical.  For example, in February 2025, one of Theorem's 1st Look program partners—Lending USA ("LUSA")—informed Pagaya of a potential concern after Theorem sent blank adverse action and decline notices to borrowers in violation of requirements in Regulation B of the Equal Credit Opportunity Act to provide specific reasons for adverse action to borrowers.  As a result, Theorem's LUSA program was put on hold pending an investigation by Pagaya's compliance team, at considerable expense to Pagaya.

- Mr. Edmundson also blocked the appointment of replacement TIC members—asserting he could operate the TIC alone, while contradictorily claiming that the departure of all other TIC members had materially impacted the TIC's authority and required notice to investors of a right to withdraw.  Feb. 3, 2025 Letter from D. Doolittle at 4-5; Feb. 22, 2025 Letter from D. Doolittle at 2.

Mr. Edmundson's actions have harmed Pagaya and decimated the value of Theorem—which is a shell of the company that Pagaya purchased only five months ago.  His actions have also harmed the Theorem funds and their investors.  It is his obstruction and inaction that caused (i) Theorem investors to pay management fees on underinvested capital—the very issue he later tried to use as a false pretext for returning capital, as discussed below—and (ii) the TIC to be underconstituted.

Diane M. Doolittle, Esq.                                                    March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                         Page 5


        b.   <u>Mr. Edmundson's Unauthorized Attempt to Disburse $120 Million in Investor Funds.</u>

Pagaya's investigation has confirmed significant additional misconduct and deception by Mr. Edmundson, including:

- Attempting to improperly disburse $120 million from Theorem funds without authorization—including $66,915.71 to himself; and

- Misrepresenting legal advice in an attempt to justify his misconduct.

Mr. Edmundson's actions surrounding his unauthorized attempt to return $120 million of capital to Theorem investors from the Main Fund and Prime+ fund on February 20, 2025, were deceitful and reckless. The first time that Mr. Edmundson raised a potential return of capital with anyone at Pagaya was at a TIC meeting on February 20, 2025. Before that meeting, he had already engaged junior Theorem operations staff to obtain administrator access on Theorem fund bank accounts and used the same junior operations staff, along with E78 Partners (Theorem's outsourced finance team) and U.S. Bank (fund administrator), to calculate the amounts to be returned, to authorize wires from the fund accounts to the fund administrator, and to prepare wires to go out.

At the February 20 meeting, Mr. Edmundson waited until the very end of the meeting to raise a return of capital, which was not on the agenda for the meeting, stating he intended to distribute capital that same day. Presented with this extraordinary, undiscussed, and unapproved plan for the first time, Pagaya's observer on the TIC, Jonathan Dobres, asked for further discussion before any action was taken. Mr. Edmundson agreed to a 6:30 p.m. ET meeting that day to discuss the return of capital. However, this was deceptive, as (i) several hours before the TIC meeting and the 6:30 p.m. call, Mr. Edmundson had already authorized the release of approximately $120 million in wires from Theorem fund bank accounts to US Bank and (ii), immediately after the TIC meeting, he authorized the release of that same amount in wires from US Bank to investors, rendering any meeting moot.

Mr. Edmundson's claim that he was compelled to return capital by his fiduciary duties to Theorem investors is baseless. Even when capital deployment was extraordinarily low prior to Theorem's acquisition by Pagaya, Mr. Edmundson had never taken the extraordinary decision to make a voluntary pro rata distribution to investors. This is an obvious smokescreen intended to directly cause damage to Pagaya. As discussed above, it was Mr. Edmundson and the TIC who repeatedly blocked capital deployment opportunities for Theorem—causing Theorem investors to pay management fees on

Diane M. Doolittle, Esq.                                           March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                    Page 6

underinvested capital.  If Mr. Edmundson truly believed that additional capital had to be deployed, he could have utilized the many investment opportunities offered to Theorem that the TIC blocked or raised his concerns with the relevant individuals within Pagaya in the ordinary course.  He did not do so.

In addition to being highly deceptive, this action was improper under the terms of the governing Theorem fund limited partnership agreements ("LPAs").  The terms of the LPAs clearly contemplated that Theorem would first pay down $36 million in outstanding liabilities before making distributions to investors.  *See, e.g.*, Theorem Main Fund Ninth A&R PA §§ 9.3(b), 9.3(e), 9.3(j); Prime+ Sixth A&R LPA §§ 9.3(b), 9.3(d), 9.3(h).  Mr. Edmundson ignored this obligation in a rush to drain the Theorem funds of capital.  His actions—clearly taken in another attempt to undermine the Merger and assert control over Theorem to which he is not entitled—expose him to legal liability including without limitation a claim to recover any and all amounts from his unauthorized return of capital that are not recovered.  To date, approximately $9 million in disbursed funds have not been returned.  Pagaya and Theorem reserve all rights to seek those lost funds from Mr. Edmundson personally.

        c.   <u>No Retaliation.</u>

Prior to his improper attempt to return capital on February 20, 2025, Pagaya took no adverse action towards Mr. Edmundson and simply investigated his claims.  Only after Pagaya discovered this extraordinary action, did it place Mr. Edmundson on paid administrative leave on February 24.  Mr. Edmundson's improper disbursement of capital was the sole cause for that decision.  As explained in Proskauer's letter to you that same day, the combined Pagaya/Theorem enterprise was required in accordance with its fiduciary obligations to take this step pending an investigation of Mr. Edmundson's actions in returning capital.  Feb. 24, 2025 Letter from J. Newville at 1.  Your attempt to recast this as "retaliation" is baseless.  Feb. 25, 2025 Letter from D. Doolittle at 1.

        d.   <u>False Claims of Legal Advice.</u>

Mr. Edmundson has only made matters worse by falsely claiming that he relied on legal advice from:

- Theorem's outside fund counsel Sasha Burstein at K&L Gates;

- Nick Wilson (Theorem's Chief Compliance Officer and Counsel); and

- Jorge Torruella (Theorem's Deputy General Counsel).

Diane M. Doolittle, Esq.                                      March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                              Page 7

Pagaya's investigation revealed that all three individuals **<u>categorically deny</u>** advising Mr. Edmundson on the return of capital.  No email evidence supports his claim—which you have repeated in multiple letters—to have received specific or detailed legal advice on this issue.  *See* Feb. 21, 2025 Letter from D. Doolittle at 2; Feb. 25, 2025 Letter from D. Doolittle at 1.  His decision to fabricate this defense further demonstrates his bad faith.  Mr. Edmundson, by his own words, performed an extraordinary and unauthorized action—the return of $120 million in investor funds—on his own.

### II.    Mr. Edmundson's False and Pretextual Claims Against Pagaya.

Pagaya has fully investigated Mr. Edmundson's allegations.  They are baseless.  His primary claims fail for the following reasons:

1.  Claim:   Pagaya restricted Theorem's investment opportunities in violation of fiduciary duties.

    - False.  The Pagaya Capital Deployment Committee ("PCDC") acted fully within its contractual authority under the Operating Principles.   Theorem was allocated $63M worth of investments in January and $65M worth of investments in February—Mr. Edmundson simply chose not to deploy available capital to those opportunities.

2.  Claim:  Pagaya improperly restricted the TIC from launching a new securitization.

    - False.  There was no business case for a new securitization.  The Theorem funds already had excess cash and were not capital constrained.

3.  Claim:  Pagaya should have credited the Theorem funds with certain fees paid as part of the PAID 2024-PT1 ABS deal.

    - False.  These fees were fully disclosed in the Private Placement Memorandum for PAID 2024-PT1 dated October 18, 2024, and all deal terms were independently approved by the TIC prior to the close of the Merger.  Moreover, as disclosed in the letter to Theorem investors requesting their consent to the Merger and in the Operating Principles, these types of securitization costs were explicitly excluded from reimbursement because third-party investors in substantially similar Pagaya securities pay similar agreed-upon fees.

4.  Claim:   Pagaya executives pressured Mr. Edmundson to invest in Pagaya-underwritten products, including by offering financial incentives.

Diane M. Doolittle, Esq.                                          March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                    Page 8

- False.  This allegation, while in line with Mr. Edmundson's "gas lighting" tactics, is not only completely made up, but also defies all common and economic sense.  This allegation was also curiously not mentioned in your February 3 letter and was only raised a month later during Mr. Edmundson's March 5 interview by Proskauer (following Mr. Edmundson being placed on administrative leave for improperly attempting to return $120 million in investor funds).  Pagaya has no logical incentive to have Theorem fail, in fact the entire Merger Agreement was structured to ensure mutual success.  No documentary evidence supports Mr. Edmundson's claims, and all relevant executives say it is not true.

5. Claim:  Pagaya's actions have hindered Theorem sellers from earning deferred compensation under the Merger Agreement.

- False.  The deferred payment is based on Theorem's AUM.  Merger Agreement §§ 1.1, 2.3.  Pagaya has a direct financial interest in increasing Theorem's AUM, making Edmundson's argument nonsensical.  As is the case with all M&A transactions, the contingent consideration was structured in a manner to benefit all parties.

6. Claim:  Pagaya failed to provide a "key person" departure notice to Theorem fund investors.

- Moot.  That notice was sent to investors on February 18, 2025.

7. Claim:  A material reconstitution or diminution of the TIC has triggered unsatisfied notice and withdrawal rights for Theorem fund investors.

- False.  Pagaya has disclosed the material developments to Theorem investors regarding changes to the TIC, including notifications about the voluntary departures of TIC members Nico Salzetta and Brian Beck in accordance with the notice provisions in the LPAs, and about Mr. Edmundson's administrative leave.  That Messrs. Salzetta's and Beck's voluntary departures and Mr. Edmundson's administrative leave, which was necessitated by his serious misconduct, has required the addition of members to the TIC is clearly not a reconstitution of the scope or authority of the TIC.  In fact, Pagaya is in the process of adding members to the TIC to ensure there is no diminution of its scope or authority, expected to ultimately consist of three members, at least two of which will be independent members, in line with the intent of the Merger Agreement.

Diane M. Doolittle, Esq.                                                                    March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                                          Page 9

8.  Claim:  A Theorem employee was asked by Pagaya to "lie" to third-party loan origination partners.

   - Moot.  No misrepresentations were made to investors.  A Pagaya employee discussed how to deal with third-party origination partners with a Theorem employee; the statement actually made to the origination partners was entirely accurate.

9.  Claim:  Theorem employees have been "constructively" terminated because of non-compete and non-solicitation provisions in offer letters for legacy Theorem employees that allegedly violate California law.

   - False.  No Theorem employee has been terminated for refusing to sign these offer letters.[1]

Every one of Mr. Edmundson's claims is factually incorrect and without support.

### III.    Damages Incurred by Pagaya.

Pagaya has suffered extensive damages as a result of Mr. Edmundson's misconduct, including, without limitation:

a.  Potential additional redemptions from investors in the Theorem funds resulting from Mr. Edmundson's reckless and self-serving attempt to return capital to fund investors;

b.  Costs associated with Pagaya's efforts to remediate Mr. Edmundson's authorized attempt to return capital to fund investors;

c.  Severe, intentional degradation of the value of Theorem; and

d.  Damages resulting from approximately $9 million in unreturned capital to the Theorem Prime+ fund.

---

[1] As discussed below, this contention, which your firm has raised on Mr. Edmundson's behalf, also raises serious concerns about your representation of Mr. Edmundson in this matter.

Diane M. Doolittle, Esq.                                                    March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                          Page 10

Pagaya plans to pursue all available legal remedies against Mr. Edmundson and other legacy Theorem employees in order to recover these damages and any other losses or damages that Pagaya identifies.

## IV.    Next Steps.

Pagaya took Mr. Edmundson's allegations seriously and conducted a thorough investigation.  That investigation confirmed his allegations are unfounded.  Mr. Edmundson's serious misconduct, however, is beyond dispute.  He has harmed Pagaya and Theorem, and the company will not stand for it.

### a.  Termination for Cause.

The misconduct outlined above constitutes clear cause for termination under Paragraph 8 of Mr. Edmundson's Compensation Letter Agreement dated July 27, 2024 (the "Employment Agreement").  Mr. Edmundson:

- Lied to Pagaya;

- Misappropriated funds without authorization;

- Willfully failed to perform his material duties; and

- Materially violated his Employment Agreement and Pagaya's written policies and/or procedures.[2]

None of this misconduct can be cured.  As set forth in the separate notice provided by Pagaya today, Pagaya will terminate Mr. Edmundson in thirty (30) days for Cause (*Id.* § II.8), giving him the benefit of the notice and cure period in his employment agreement, with no obligation to do so.[3]  If we do not reach a resolution during that time, Pagaya will pursue all available legal remedies against him.

### b.  Further Investigation.

Pagaya's investigation of Mr. Edmundson's conduct at Theorem both before and after the Merger is ongoing.  Pagaya reserves the right to take all appropriate legal action, including

---

[2] *See* Employment Agreement § II.8(i), (iv)–(vi).

[3] *See* Employment Agreement § II.8.

Diane M. Doolittle, Esq.                                          March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                           Page 11

regulatory referrals and commencing litigation—which would expose current and former Theorem employees to depositions and potential liability if they are complicit in Mr. Edmundson's misconduct.  Pagaya also intends to fully enforce its rights under the Merger Agreement and will pursue all available remedies for any breaches of representations, obligations, or duties under that agreement by Mr. Edmundson and any members of the Theorem team.

**V.      Quinn Emmanuel's Conflict.**

Your firm's involvement in this matter violates your ethical duties and the rules of professional responsibility.  Specifically, as noted in Proskauer's February 10, 2025 letter to you, your firm previously provided legal advice to Pagaya on the enforceability of the same employment agreements that you claim in your February 3 letter are improper.  Feb. 10, 2025 Letter from J. Newville at 3.  You previously dismissed this concern, asserting that you "provided counsel to Pagaya many months ago" before the "current issues in dispute had arisen."  *See* Feb. 14, 2025 Letter from D. Doolittle at 3.  That is wrong. Pagaya regularly sought and received advice on employment matters—including on the very non-compete and non-solicitation provisions that Mr. Edmundson and you have put at issue—from Quinn Emanuel Partner Kimberly Carson and did so as recently as January 14, 2025.  In other words, your firm was actively advising Pagaya on the very issues you raised in your February 3, 2025 missive less than *three weeks* before you sent it.  Worse, given that your representation of Mr. Edmundson likely began several weeks before your February 3, 2025 letter, it appears your firm may have been advising both sides of this dispute at the same time in clear violation of the law and your obligations to Pagaya.  The fact that you are taking an adverse position to Pagaya on employment agreement issues less than a month after your firm advised Pagaya on the same issues raises serious ethical concerns.  We demand that you promptly and fully investigate this conflict and your compliance with your ethical obligations and withdraw from your representation of Mr. Edmundson.

*        *        *

Diane M. Doolittle, Esq.                                      March 28, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                            Page 12


Pagaya expressly reserves all rights, claims, and defenses.

Sincerely,

Orin Snyder