# EXHIBIT I

# GIBSON DUNN

Katherine V.A. Smith
Partner
T: +1 213.229.7107
M: +1 818.231.7710
ksmith@gibsondunn.com

June 13, 2025

<u>Via E-Mail</u>

Harry A. Olivar, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
harryolivar@quinnemanuel.com

Re:    Hugh Edmundson

Dear Harry:

I write on behalf of Pagaya Technologies Ltd., Pagaya Investments US LLC (collectively, "Pagaya" or the "Company"), and Theorem Partners LLC in response to your May 28, 2025 letter ("Letter") concerning your firm's involvement in this matter.

You concede in your Letter—as you must—that Pagaya sought and received legal advice from Quinn Emanuel, through Partner Kimberly Carson, not only concerning "California employment law," but specifically regarding "the enforceability of restrictive covenants in California" during a call on January 14, 2025.  Letter at 1.  That narrow description, however, fails to capture the full extent and substance of the advice Quinn provided.  In truth, Pagaya sought and received legal advice that was not merely "substantially related" to the agreements at issue in the lawsuit Quinn has now wrongfully filed against its own client, but advice that concerned the identical agreements and legal issues raised in that very complaint.

Quinn's engagement was not a "one and done" phone call.  Pagaya, as it had done before when receiving advice from Quinn related to its form employment agreements, expected to rely on Quinn's advice and to continue its dialogue with Quinn to ensure full compliance with applicable law.  That is exactly what happened.  Just two days later, on January 16, 2025—and as your April 24, 2025 letter acknowledges (Apr. 24 Ltr. at 2)—Pagaya followed up with Ms. Carson to request related guidance regarding separation and release agreements for certain Theorem employees, including employees in California.  Ms. Carson replied that she would "take a look."  (Jan. 16, 2025 Email from K. Carson to N. Wilmore.)  That follow-up consultation reflects an ongoing attorney-client relationship and further confirms the direct connection between the advice Quinn gave Pagaya and the claims Quinn now seeks to assert against it.

It was only at that point—when it is clear that Quinn saw a more lucrative opportunity representing Mr. Edmundson—that Quinn sought on January 17, 2025, to abruptly

**Gibson, Dunn & Crutcher LLP**

333 South Grand Avenue  |  Los Angeles, CA 90071-3197  |  T: 213.229.7000  |  F: 213.229.7520  |  gibsondunn.com

Harry A. Olivar, Esq.                                                          June 13, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                                        Page 2

terminate its longstanding relationship with Pagaya.  (Jan. 17, 2025 Email from K. Carson to N. Wilmore.)  Two weeks later, on February 3, 2025, Quinn sent Pagaya a letter on behalf of Mr. Edmundson accusing Pagaya of violating California law by demanding Theorem employees sign employment contracts containing non-compete and non-solicitation provisions—i.e., the very provisions on which Pagaya had sought and received Ms. Carson's advice.  (Feb. 3, 2025 Ltr. from D. Doolittle at 4.)  That maneuver is both ethically indefensible and legally impermissible.

As you well know, Quinn Emanuel cannot cast off an existing client like a "hot potato" in order to sue that client for another.  That is exactly what Quinn has attempted to do here.  The so-called "Hot Potato Rule" has long been settled law in California.  *See, e.g.*, Truck Ins. Exchange v. Fireman's Fund Ins. Co. (1992) 6 Cal.App.4th 1050, 1057, reh'g denied and opinion modified (June 10, 1992).  And yet, Quinn now claims—without credibility—that its advice to Pagaya was "general" and non-substantive.  That effort to reframe the facts is unavailing.  Nor does it help Quinn to assert that it did not send a bill for the work—if anything, that omission appears to be a calculated attempt to fabricate deniability.  The absence of an invoice does not erase the clear existence of an attorney-client relationship.  The rules of professional conduct do not permit lawyers to avoid ethical duties by simply neglecting to document their engagement.

But even if Quinn could plausibly argue that its representation ended with the January 14 call (it cannot), the conflict would still be fatal.  That is because, under California Rule of Professional Conduct 1.9, even former clients are protected from adverse representation in matters that are "substantially related" to prior engagements.  There is no serious dispute that the issues Quinn now raises against Pagaya are substantially—and in fact directly—related to the advice it provided to Pagaya just months ago.  Rule 1.7 applicable to current clients is likewise implicated, and any suggestion that Pagaya somehow "waived" its rights under these rules is both false and legally irrelevant.  A client cannot waive such rights.

The situation is made even more troubling by the nature of the advice Quinn provided.  If Pagaya followed Quinn's guidance in good faith—and is now being sued for doing so—then Quinn may be liable for providing negligent legal advice.  And if, as now appears possible, Quinn provided incomplete or self-serving advice in anticipation of later switching sides and initiating litigation, then Pagaya reserves the right to pursue all appropriate remedies for what would amount to a gross betrayal of trust and professional responsibility.

It is particularly egregious that Quinn has taken this step not only in conflict with its prior obligations to Pagaya, but by filing a public complaint in California state court—rather than in the confidential arbitration forum required by the contract between Pagaya and Mr. Edmundson.  In doing so, Quinn has compounded its ethical breach with a blatant

Harry A. Olivar, Esq.                                            June 13, 2025
Quinn Emanuel Urquhart & Sullivan, LLP                          Page 3


disregard for binding contractual obligations.

Accordingly, Quinn Emanuel must immediately withdraw from its representation of Mr. Edmundson.  This is not a request—it is a demand, rooted in well-settled legal and ethical principles.  Please confirm by June 17, 2025 that your firm will do so. If we do not receive such confirmation, Pagaya will have no choice but to move for Quinn's disqualification in this matter.

*       *       *

Pagaya expressly reserves all rights and waives none.

Sincerely,

Katherine V.A. Smith