# EXHIBIT 1

Docusign Envelope ID: E75C59EA-EB50-4CA3-99EF-56BBEDBE9317

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7309**

WRITER'S EMAIL ADDRESS
**kimberlycarson@quinnemanuel.com**

July 30, 2024

**PRIVILEGED & CONFIDENTIAL**

**VIA E-MAIL**
**ERIC.WATSON@PAGAYA.COM**

Eric Watson
Chief Legal Officer
Pagaya Technologies Ltd.
90 Park Avenue, 19th Floor
New York NY 10016

Re:     Employment Dispute

Dear Mr. Watson:

We are pleased to confirm your engagement of Quinn Emanuel Urquhart & Sullivan, LLP ("QEU&S") as counsel to represent Pagaya Technologies Ltd. ("Pagaya") in connection with enforcing restrictive covenant agreements against departing employees Benjamin Blatt, Greggory Davis, and Paul Limanni with respect to their potential future employment by Performance Trust Capital Partners (the "Engagement"). The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services to Pagaya in connection with the Engagement. We believe that a mutual understanding of these terms and conditions at the outset is fundamental to establishing a good working relationship. In this engagement letter, we sometimes refer to Pagaya as "you" or "your" and to QEU&S as "we," "our," or "us."

*Client*

Our engagement is on behalf of Pagaya only. In representing Pagaya, we will not be representing any officer, director, employee, owner, founder, member, shareholder or partner of, or any other person affiliated with Pagaya; or any subsidiary, parent, or other affiliate of Pagaya. If any of these persons or entities think that they may require counsel, we would be happy to discuss with them whether we might be able to represent them as well, but any such representation would need to be covered by a separate engagement letter, and would depend on a

1

review by us and disclosure to all concerned of the conflicts of interest that would or could arise in connection with any such concurrent representation, and on appropriate consents being obtained from Pagaya and from those seeking such additional representation.

### *Scope of Engagement*

You have engaged QEU&S to represent you in connection with the Engagement. QEU&S's services will be limited to the representation of Pagaya in the Engagement. Our services will not extend to other business, personal or legal affairs of Pagaya, or to any other aspect of Pagaya's activities. Our representation will conclude with the settlement of the case or entry of an award or judgment or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. Our engagement does not include the defense or prosecution of an appeal. If an appeal is appropriate and if we agree to represent Pagaya in the appeal, we reserve the right to enter into a separate agreement for that representation. This Engagement is not intended to encompass any matter in which the professional services of QEU&S will be involved in entering an appearance in any litigation or before any tribunal, and any such matter shall be the subject of an additional separate and specific engagement letter. QEU&S's receipt or use of confidential or other information from Pagaya or others in the course of this representation does not mean that QEU&S will render any other advice or services either to Pagaya or any other person or entity. Similarly, Pagaya will not look to or rely upon QEU&S for any investment, accounting, financial, or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom Pagaya may be dealing.

### *Insurance Coverage and Claims*

Pagaya understands and agrees that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If Pagaya has not done so already, Pagaya should consider tendering this matter to Pagaya's insurer(s) in order to determine whether there is insurance coverage for any of the claims asserted.

### *Responsible Persons – Communications Between QEU&S and Pagaya*

We will keep Pagaya regularly and currently informed of the status of the Engagement and will consult with you whenever appropriate. Within QEU&S, I will be primarily responsible for the Engagement and will be actively involved in the preparation of the case and any trial. My telephone number is 212-849-7309 and e-mail address is kimberlycarson@quinnemanuel.com. In the event that you need to reach me and I am unavailable, please leave a voicemail message for me. It is my policy that all calls will be returned promptly. In the event of an emergency, please call my assistant, Meghan Van Etten, at 212-849-7459 and my assistant will endeavor to reach me as soon as practicable thereafter. I will seek to staff this Engagement in a manner that I think will be the most effective and efficient. I will be happy to discuss with you any staffing issues or concerns you may have at any time.

### *Protection of Client Confidences – High Tech Communication Devices*

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences. We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person. Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement. Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections. Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

### *Pagaya's Designee to Receive Communications*

We understand that you are designated as the person who is primarily responsible for managing the Engagement within Pagaya and that you are authorized to direct our activities and deal with us on any issues relating to the Engagement, including billing. Unless otherwise directed by Pagaya, we shall fulfill our obligation to Pagaya to keep Pagaya informed as to the progress of the Engagement by communicating with you and by keeping you so informed, and it shall be your obligation to communicate with all others within Pagaya regarding the progress of the Engagement.

### *Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "General Counsel"). The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients. Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters. QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm. It is possible that attorneys or staff working on matters for Pagaya may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of Pagaya. In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning Pagaya's representation, and may receive legal advice related to QEU&S's work on Pagaya's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place. By retaining QEU&S Pagaya acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of Pagaya and after such representation ends, and Pagaya confirms that such communications are privileged and protected against disclosure to you.

*Responsibilities of Client*

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments. In addition, it is important that Pagaya and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

*Preservation of Electronically Stored Information ("ESI")*

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("ESI"), is an essential prerequisite to the development of a successful litigation strategy for every client. The duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you or your action being dismissed. In the event Pagaya has not already issued a litigation hold in this matter, we request that you immediately do so. We would be pleased to assist you with preparing the litigation hold and otherwise providing guidance on the duties related to preservation of ESI.

*No Guarantee of Result*

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. We cannot and do not guarantee any particular course or outcome of the Engagement.

*Government Service by QEU&S Lawyers*

From time to time, QEU&S lawyers also serve as appointed or elected government officials. One of our lawyers, Steve Madison, is currently an elected City Councilmember in Pasadena, California, and another lawyer, Francis Suarez, is currently the elected Mayor of Miami, Florida. This government service is performed in an individual capacity, not on behalf of QEU&S. Pagaya acknowledges and agrees Pagaya will not receive any favorable consideration or treatment from the City of Pasadena or the City of Miami or any agency, department or employee thereof, as a result of Pagaya's retention of QEU&S or QEU&S's representation of Pagaya. Pagaya further acknowledges and agrees that applicable government ethics rules may require recusal by any QEU&S lawyer from consideration in their official capacity of any matter involving a QEU&S client or adversary.

*Future Conflicts of Interest*

Our firm has many lawyers and several offices. We may currently or in the future represent one or more other clients in matters involving Pagaya and we may represent the parties that are adverse to you in this matter in other matters. We are undertaking this Engagement on condition

that Pagaya gives its express consent and agreement that we may represent other clients, including the parties adverse to you in this matter, in the future in other matters in which we do not represent Pagaya even if the interests of the other clients are adverse to Pagaya (including the appearance on behalf of another client adverse to Pagaya in a negotiation, litigation or arbitration).

To the extent insurance is at issue in relation to the Engagement, we disclose that QEU&S has previously represented or is currently representing, various insurance companies, such as American International Group, Allstate Insurance Company, Liberty Mutual Insurance, Prudential Insurance Company of America, State Farm Insurance Company, The Travelers Companies, and others.

### *Conflicts Issues (Capital Structure and Multi-Party Matters)*

Our firm has many lawyers and offices. We have an active bankruptcy and restructuring practice and we may currently or in the future represent one or more other clients in Restructuring Matters (as defined below) in which Pagaya may hold investments or otherwise have an economic interest in the outcome. We are undertaking this engagement on condition that we may now or in the future represent other clients in Restructuring Matters in which we do not represent Pagaya even if the interests of the other clients are adverse to yours (including the appearance on behalf of another client adverse to Pagaya or its economic interests in negotiation, litigation or arbitration in Restructuring Matters). For example, Pagaya may beneficially own debt in a particular tranche of a company's capital structure, and we may represent the company (or its board of directors or subset thereof) or its equity owner(s), or beneficial owner(s) of another tranche of debt, in each case with disparate interests from Pagaya in Restructuring Matters. Pagaya's express consent to this arrangement is required because of duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence. Also, if an attorney does not continue an engagement or is required to withdraw from a matter, the client may incur delay, prejudice or additional cost associated with acquainting new counsel with the matter.

In addition to the foregoing, we also frequently represent clients in complex multi-party disputes and we may currently or in the future represent one or more clients in Multi-Party Matters (as defined below), including Multi-Party Matters involving Pagaya. We are undertaking this engagement on condition that we may now or in the future represent other clients in Multi-Party Matters in which we do not represent Pagaya even if the interests of the other clients are adverse to yours (including the appearance on behalf of another client adverse to Pagaya in negotiation, litigation, or arbitration in Multi-Party Matters).

"Restructuring Matters" means matters: (i) arising in, arising under, or relating to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. or any similar federal, state, or international laws governing creditors' rights; and/or (ii) arising from or relating to a company's merger, acquisition, divestiture (including a spin-off), refinancing, recapitalization, restructuring, liability management exercise, consent solicitation, exchange, tender, out-of-court workout, or other capital structure modification.

"Multi-Party Matters" means matters in which there is more than one plaintiff or defendant which do not share a corporate affiliation, including (for illustrative purposes only) but not limited to patent disputes and anti-trust actions.

The above conflict waiver waives possible conflicts based on future facts and circumstances that cannot be known at this time.

Pagaya acknowledge that (a) TBD is a sophisticated client who understands the advantages and risks of choosing QEU&S, which is a large international firm that regularly represents clients in similar disputes from different vantage points, and (b) QEU&S will not be disqualified from another matter on account of the Engagement creating a "positional conflict" or revealing Pagaya's "confidential strategy" or "litigation playbook." The countersignature to this letter on behalf of Pagaya acknowledges that we have made disclosure to Pagaya of the nature and breadth of QEU&S's practice and that Pagaya has had the opportunity to confer with its counsel prior to agreeing to the conflict waiver set forth herein.

### Billing

Our fees are based on the amount of time we spend on this Engagement. Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually on September 1, each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2024, a class of 2023 graduate's rate will move up from a first-year associate rate to a second-year associate rate, and so on. These "class graduation" adjustments are not rate increases, and Pagaya acknowledges and agrees to these associate class adjustments by signing this letter. The billing rates of the attorneys whom we anticipate assigning to this Engagement currently range from \$1,645 for Kimberly Carson, to \$1,465 for a 7th year associate and to \$1,060 for a 2nd year associate (for example). If one of our professionals performs multiple tasks for Pagaya during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing." Pagaya agrees that we may block bill.

### Discount

QEU&S has approved a 10% discount for the Engagement.

### Estimates

Pagaya understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter. From time to time during the course of our Engagement we may provide Pagaya with estimates of costs and fees or projected budgets for our work going forward. Ordinarily, we do not provide these projections unless Pagaya specifically requests us to do so. When we do provide them, we will make a good faith effort to estimate what the future cost will be. However, in no case can such projections be guarantees regarding what the actual cost will be. The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the

6

litigation. In all instances when we provide such projections, they should be viewed as guidance only. The fees and costs which Pagaya will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

*Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing. We pass along out-of-pocket costs and charges that we incur on our clients' behalf. These typically include messenger charges, deposition videography and transcript charges and administrative charges. Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.02-$0.03/page), ECA filtering $15-$75/GB), data processing ($50-$150), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.88-$1.50/document), generative AI analysis ($0.02/document/month), generative AI document review ($0.30 per document), hosting ($10-$20/GB) and litigation support consulting at hourly rates of $190 to $395 per hour, depending on the work performed. Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs (including business class travel for flights over 3 hours), meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on Pagaya's behalf, and similar charges. Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case. These charges will be at cost. The costs listed are the current rates but may be subject to future adjustment. Pagaya agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to Pagaya for payment, which will also be due and payable upon receipt. Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event Pagaya has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, Pagaya agrees that the terms of this Engagement Letter shall apply unless a copy of Pagaya's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event Pagaya's billing guidelines shall control.

We will submit bills on a monthly basis. All bills shall be paid within thirty days of receipt by you. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 8% per annum on invoices that are

90 days or more past due.  If Pagaya has any question regarding, or wish to challenge any bill, Pagaya shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge.

### *Our Lien on Any Recovery You Obtain*

Pagaya hereby grants us a lien as security for the payment of fees and costs due and owing to us under this agreement.  This lien will attach to any recovery Pagaya may obtain, whether by arbitration award, judgment, settlement or otherwise, in connection with the Engagement, and we may use this lien to enforce our right of payment.  This lien entitles us to be paid first and before any payment can be made to you.  The lien allows us to compel payment of our unpaid fees, interest, costs, advances and expenses.  The lien is intended to remain valid even if for any reason we no longer represent you in this matter.  The lien could delay payments to Pagaya or receipt by Pagaya of some or all of any recovery Pagaya may obtain as a result of our services until any dispute over the amounts to be paid to us is resolved.  You also authorize us to make disclosure of the lien when such is necessary to enforce our rights and interests.

Pagaya may seek the advice of an independent lawyer of your choice about this lien provision and its consequences.  Pagaya also has the right to ask us questions about our understanding of the lien.  By signing this agreement Pagaya acknowledges that Pagaya has been advised of the terms of this lien agreement and of Pagaya's right to consult independent counsel.  Pagaya also acknowledges that Pagaya has been given a reasonable opportunity both to seek such advice and to ask us any questions that you may have prior to signing.

### *Award of Costs and Fees*

A court may sometimes order a payment of costs or attorneys' fees by one party to the other.  If any fees or costs are paid to us, they will be credited against any amounts Pagaya owes us, but Pagaya will be obligated for any unpaid portion of our statements as they become due.  Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award.  Any fee or cost award received from another party will be credited to Pagaya's account, unless it results in a credit balance.  If it does, we will refund the balance to Pagaya.  If a court awards fees or costs against Pagaya and in favor of an opposing party, Pagaya will be responsible for payment of that amount separately from any amounts due to us.

### *Retainer*

Pagaya has agreed to pay us $50,000 as a retainer toward our statements.  This sum will be used to pay our fees, costs, and other expenses incurred on Pagaya's behalf.  Each month when the retainer balance is drawn down to pay our monthly statements, we will expect our fees to be paid and the retainer replenished to its full amount of $50,000 within thirty (30) days of your receipt of our statement, so that the retainer balance is always at least $50,000.  Any funds paid to us for our past or future fees and charges shall be treated as "retainer" funds until such time as they are applied to our outstanding invoices or returned to Pagaya.

Our wire instructions for sending retainer funds for U.S. matters are below:

**BANK:** City National Bank
**ADDRESS:** 555 South Flower Street, 18th Floor
Los Angeles, CA 90071  (213) 673-8763
**REFERENCE:** Quinn Emanuel Urquhart & Sullivan, LLP
**ROUTING NUMBER:** 1220-16066
**ACCOUNT:** Client Trust Account #210032339

This retainer amount is set based on the current scope of anticipated work, which is pre-litigation.  If the pace of work increases, the matter proceeds to litigation, or for any other reason the retainer is not sufficient to cover our outstanding unpaid fees, disbursements and other charges during the course of the month, Pagaya will pay us an additional retainer.

Immediately after the first setting of a trial date and at least 130 days before the trial date, we will provide Pagaya with our estimate of the probable fees and expenses we expect to incur through the end of the trial (the "Trial Retainer Amount").  Pagaya will pay that amount within ten days thereafter.  If Pagaya fails to pay the Trial Retainer Amount within such 10-day period, we may, subject to the applicable rules of professional conduct and to our obtaining the requisite permission of the court hearing the matter, withdraw from our representation of Pagaya.  We may revise our estimate at any time before the end of the trial.  For these purposes, "trial" includes an arbitration or hearing at which evidence is presented for disputed questions of fact.

All retainer funds will be deposited and maintained in the firm's client trust account.  The retainer funds will be treated as an advance against our fees and charges, and such funds shall be subject to a lien in favor of QEU&S.  Upon delivery of bills in accordance with the terms of this Engagement Letter, the retainer funds held up to the amount of such bills will be treated as property of QEU&S and may be withdrawn from our retainer account.  Any balance of the retainer then remaining will be credited toward the amount of our final bill on completion of our representation, and if the amount of the retainer exceeds the total charge for our final bill, we will refund any excess to Pagaya, within sixty (60) days from the date of our final bill.  Any excess funds will be paid only to the party who paid the initial retainer.

Please let us know promptly if you have any questions or concerns about the services provided by anyone at QEU&S or about any billing statement so that we can act appropriately.

*Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding.  If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn in our Los Angeles office at (213) 443-3000, to discuss it.  You may terminate this representation at any time, with or without cause.  Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical.  Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf.  In the event of

termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

### *Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is the date on which we first performed services. The date at the beginning of this letter is for reference only. If this letter is not signed and returned with the retainer for any reason, Pagaya will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on Pagaya's behalf.

QEU&S's representation of Pagaya will be considered terminated at the earliest of (i) Pagaya's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

### *File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement. Pagaya's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees. QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format. It is our practice to retain the permanent records of the matter, in accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended. If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

### *Other Litigation or Proceedings*

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving Pagaya or related persons or entities, Pagaya shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates). Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of Pagaya in this matter (including unmeritorious disqualification proceedings), Pagaya agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result. This paragraph is not intended to apply to any claim brought by or on behalf of Pagaya alleging wrongdoing by QEU&S.

### *Arbitration*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, we believe that most, if not all, disputes can be resolved

more expeditiously and with less expense by binding arbitration than in court. This provision will explain under what circumstances such disputes shall be subject to binding arbitration.

NEW YORK:

(a)     AGREEMENT TO ARBITRATE:

Any dispute between QEU&S and Pagaya as to attorneys' fees and/or costs in connection with the Engagement shall be resolved as follows:

1.      By signing this Engagement Letter, Pagaya acknowledges that it has received and read a copy of the official written rules, instructions and procedures for both the fee arbitration program under Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR § 137) (the "Section 137 Arbitration Program") and the rules and procedures in effect in the First Department and the JAMS Streamlined Arbitration Rules and Procedures. Pagaya understands that not all disputes as to attorneys' fees and/or costs may be subject to the Section 137 Arbitration Program.

2.      By signing this Engagement Letter, Pagaya acknowledges that it has been advised that (1) it has the right to use the fee arbitration procedures of Part 137, which includes the right to reject the arbitrator(s) award by commencing an action on the merits (trial de novo) in a court of law; (2) in the absence of this agreement, it would have the right to choose whether or not to participate in this program; and (3) signing this Engagement Letter does not foreclose the parties' attempting to resolve this fee dispute at any time through voluntary mediation.

3.      By signing this Engagement Letter, Pagaya acknowledges that it has had any questions answered concerning the applicability of the Section 137 Arbitration Program to any potential disputes.

4.      By signing this Engagement Letter, Pagaya and QEU&S agree to waive their rights with regard to arbitration pursuant to Part 137, which includes the right to reject the arbitrator(s) award by commencing an action on the merits (trial de novo) in a court of law.

5.      Pagaya and QEU&S agree that in the event a dispute should arise as to QEU&S's fee for legal services, they will resolve the fee dispute by arbitration before an arbitral forum outside Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR), and that the arbitration shall be governed by the rules and procedures of that forum, as outlined in ¶ (b) below.

6.      Pagaya has also been advised of any fees associated with using the arbitral forum specified in ¶ (b) below, according to the schedule of fees for that arbitral forum and Pagaya acknowledges that it has received the Arbitration Schedule of Fees and Costs of JAMS.

Any other dispute arising in connection with the Engagement or with the provision of legal services by QEU&S including, without limitation, any claim for breach of contract, professional negligence or breach of a fiduciary duty, shall be resolved by confidential, binding arbitration as described in ¶ (b) below.

11

Pagaya further acknowledges that this agreement to arbitrate results in a waiver of Pagaya's right to a court or jury trial for any fee dispute and malpractice claim. This also means that Pagaya may be giving up its right to discovery and appeal, to compel witnesses and documents, to seek all available relief (except punitive damages which are provided for under state law), and to have the matter heard in a public forum. If Pagaya later refuses to submit to arbitration, Pagaya may be ordered to do so. Pagaya acknowledges that, before signing this Engagement Letter and agreeing to binding arbitration, Pagaya is entitled to, and has been given, a reasonable opportunity to seek the advice of independent counsel.

(b)     ARBITRATION PROCEDURES:

In the event of any dispute that is subject to arbitration pursuant to ¶ (a) above, the initiating party will provide a written demand for arbitration to the other party setting forth the basis of the initiating party's claim and the dollar amount of damages sought.

The parties further agree that, if arbitration is necessary, each arbitration will:

1.      Be heard and determined by a panel of three arbitrators with one selected by each party to the arbitration, and the third selected by the first two from the panel of arbitrators of JAMS (or its successor). Once a party selects an arbitrator and notifies the other party (the "non-selecting party") of its selection, the non-selecting party shall select an arbitrator within thirty (30) calendar days. If the non-selecting party fails to select an arbitrator within thirty (30) calendar days, JAMS (or its successor) shall select an arbitrator on the non-selecting party's behalf. Once two arbitrators are selected, those two arbitrators shall select the third arbitrator (from the panel of arbitrators of JAMS, or its successor) within twenty (20) calendar days. If the first two arbitrators fail to select a third arbitrator within twenty (20) calendar days, JAMS (or its successor) shall select an arbitrator (from the panel of arbitrators of JAMS, or its successor) on their behalf.

2.      All selected arbitrators shall be retired state or federal judges;

3.      Take place in the city in the United States where the QEU&S attorneys who spent the most time on the Engagement are located (the "applicable city");

4.      Be conducted in accordance with JAMS Streamlined Arbitration Rules and Procedures (or any successor rules and procedures), in effect at the time the initiating party delivers to the other party the demand for arbitration required hereunder;

5.      Require the arbitrators to enforce the terms of this agreement, and they will lack authority to do otherwise;

6.      Apply the laws of the jurisdiction in the United States where the applicable city is located. The arbitration proceedings and the decision of the arbitrator will be confidential. Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S

attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator; and

7. Be final and binding on both parties, will not be subject to de novo review, and that no appeal may be taken. The ruling of the arbitrator(s) may be entered and enforced as a judgment by a court of competent jurisdiction. The arbitration provisions of this Agreement may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses.

### *Guidelines*

This letter attaches as **Schedule A** Pagaya's Outside Counsel Engagement and Billing Policies (the "Guidelines"). To the extent that this letter conflicts with the terms of the Guidelines, it is understood and agreed that the terms of this letter govern. QEU&S generally agrees to the terms of the Guidelines except that:

- Discounts: QEU&S has approved a 10% discount for the Engagement.

- Rate Increases: QEU&S cannot agree to freeze rates for the life of a matter or a period of two years from the start of the Engagement. Rates are based on seniority and expertise, and, due to market and economic forces, rates are subject to adjustment annually and we provide 30 days' notice before they go into effect. In addition, our associate rates are based on years out of law school, so annually on 9/1, each associate's rate moves up to the next higher class rate on our rate schedule (this is not considered a rate increase since they move to the next class year rate within the same rate schedule).

- Budgets: QEU&S sees budgets as estimates and not caps in regards to our billings and expects to be paid for any work performed that added value to the matter even if it was not in the budget or approval was not requested/obtained timely. QEU&S agrees to discuss any overages but in complex litigation previously unknown issues arise which can cause QEU&S to go over a previously-submitted budget. QEU&S cannot agree to waive these fees. Firm policy is to bill for time spent on budgeting, case administration, and status and progress reports for clients.

- Block Billing: QEU&S cannot agree to a ban on block billing. Firm policy is to block bill.

- Legal Research Time: QEU&S charges for legal research. Although QEU&S will strive to keep Pagaya informed of significant research projects, we expect to be paid for any work performed which added value to the matter even if pre-approval is not obtained timely.

13

- Computerized Research: QEU&S agrees not to bill Pagaya for basic searches in Lexis/Westlaw covered by our contracts, however, advanced searches not covered by our contracts will be passed along to Pagaya as a pass through. We will strive to limit off-contract searches, and strive to perform out-of-contract research only where needed, for a limited time, and upon billing partner approval.

- Timekeeper Approval: Although QEU&S will strive to keep Pagaya informed of staffing changes, we expect to be paid for any work performed which added value to the matter even if pre-approval is not obtained timely. To ensure staffing is regulated, going forward, going forward, QEU&S will restrict the client's matters to only those timekeepers that have been approved in writing by client and will only add new timekeepers with written confirmation from the client.

- Staffing/ Multiple Attendees: Although QEU&S will strive to staff meetings, witness interviews, telephone conferences, depositions, hearings, and other proceedings efficiently, it is not practical to obtain prior written approval from Pagaya whenever more than one lawyer needs to attend such events, and we expect to be paid for any work performed which added value to the matter even if pre-approval is not obtained timely.

- Internal Conferences: Although QEU&S will strive to staff matters efficiently, given the complex litigation that is being practiced, internal conferences are inevitable and we expect to be paid for time which added value to the matter, so we cannot agree to automatic reductions/rejections for internal conferences.

- Administrative Tasks: Although QEU&S will strive to staff matters efficiently, certain of the tasks defined as paralegal or clerical tasks in the Guidelines may be performed by attorneys or paralegals and we expect to be paid for each timekeepers' time that added value to the matter, so we cannot agree to automatic rate reductions or not being paid for such work.

- Third Party: QEU&S agrees to discuss with Pagaya large purchases from third-party vendors, however, we cannot agree to automatic rejections and reductions if approvals are not obtained and submitted timely. Furthermore, for contract attorneys, we bill them at a marked-up rate as we house them and provide them with the necessary resources to perform their duties.

- Delayed Billing: While QEU&S will strive to bill in a timely manner, we can, at times, run into delays with individual fees and expenses that are out of our control, and we therefore cannot agree to not being paid for services and expenses rendered even if submitted late.

- Litigation Support: Please note that QEU&S bills for electronic discovery services outlined in the LTAS description provided, including hosting.

- Document Reproduction: QEU&S's at-cost is as follows: for internal b&w and color document reproduction (b&w $0.20 and color $0.25); Scan cost (b&w and

14

color $0.18); Fax cost (in/out coming $0.86); Coil, Velo, Comb @ $1.26. QEU&S agrees to bill all document reproduction at-cost, however QEU&S cannot enter any exceptions below cost.

- Overnight/ Express Mail/ Couriers:  Firm policy is to bill for messenger and delivery services.

- Summers, Law Clerks, and 1st and 2nd Year Associates:  While we will aim to staff the Engagement efficiently, firm policy is to bill for time incurred by summer associates, law clerks, and junior associates.

- Local Meals and Travel/ OT Travel:  QEU&S agrees not to bill for local travel/meals associated OT, but would bill for local business travel and local travel associated with approved out-of-town travel.

- Other Travel:  Firm policy is to bill for work-related travel time as well as reasonable travel costs including hotel, airfare, and meals.

## *Binding Agreement*

By signing below, Pagaya agrees that Pagaya has had enough time to review this letter, that we have advised you that Pagaya has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which Pagaya may wish to avail itself of such advice, and that Pagaya is satisfied that it understands this letter.  Pagaya also agrees that Pagaya has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that Pagaya has freely determined, without any duress, to sign and agree to these terms.

## *Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

## *Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

If Pagaya later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

If the foregoing accurately reflects our agreement, please confirm that by signing and returning this engagement letter to me with the initial retainer amount.  In the event that you do not sign and return the letter within ten (10) days from the date of this letter, your instructing us or continuing to instruct us on this Engagement will constitute your full acceptance of the terms set out in this letter.

15

Please do not hesitate to call me to discuss any questions you may have regarding this agreement.

In conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you and your payment of the initial retainer.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

Very truly yours,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Kimberly E. Carson

STATEMENT TO BE SIGNED BY CLIENT:

I have read the above Engagement Letter and understand and agree to its contents. The parties to this Engagement hereby agree that a faxed, PDF or electronic signature shall count as the original.

Pagaya Technologies, Ltd.

By: _Eric Watson_
DocuSigned by:
31D5980910E74FE...

Name: Eric Watson

Title: Chief Legal Officer

Date: 31.07.2024 | 16:44 ISDT

7.24   [← **DO NOT REMOVE THE CODE AT LEFT MARGIN**]